Milton M. SHOCKLEY, Jr., Roy C. Young, Jr., and W.H. Alford, Plaintiffs,

v.

HOECHST CELANESE CORPORATION, Groce Laboratories, Inc., and William H. Groce, III, Defendants,

and

HOECHST CELANESE CORPORATION, Third Party Plaintiff,

v.

ALLIED CHEMICAL NUCLEAR PRODUCTS, INC., Platt Saco Lowell Corporation, Square D. Company, W.R. Grace & Co.—Conn., The Dow Chemical Company, Owens–Corning Fiberglas Corporation, General Battery Corporation, Union Carbide Chemicals and Plastics Company, Inc., C.H. Patrick & Co., Inc., Textron, Inc., Steel Heddle Mfg. Co., Tanner Chemical Company, Inc., Baxter Healthcare Corporation, Columbia Organic Chemical Company, Inc., Carolina Plating & Stamping Co., Inc., BASF Corporation, Southern Railway, Exide Corporation, North American Philips Corporation, J.P. Stevens & Co., Inc., Phillips Fibers Corporation, American Monorail, Inc., Minnesota Mining and Manufacturing Company, Spartan Express, Inc., Overnite Transportation Company, Roadway Express and Central Transport, Inc., Third Party Defendants.

Civ. A. No. 6:90–0018–17.

United States District Court, D. South Carolina, Greenville Division.

Oct. 24, 1990.

J. Kendall Few, John C. Few, Greenville, S.C., for plaintiffs Milton M. Shockley, Jr., Roy C. Young, Jr. and W.H. Alford.

David L. Freeman, Bradford W. Wyche, Wyche, Burgess, Freeman & Parham, Greenville, S.C., for defendant Hoechst Celanese Corp.

H. Brent Fortson, Foster, Gaddy, Foster & Fortson, Greenville, S.C., Mark A. Thimke, Michael D. Flanagan, Foley & Lardner, Milwaukee, Wis., for defendant Groce Laboratories, Inc.

W. Allen Reese, Ron McKinney, Duggan, Reese & McKinney, Greer, S.C., for defendant William H. Groce, III.

James W. Potter, Richard W. Smith, Robert W. Dibble, Jr., McNair Law Firm, Columbia, S.C., for third party plaintiffs Allied Chemical Nuclear Products, Inc., W.R. Grace & Co.–Conn., Dow Chemical Co., Union Carbide Chemicals and Plastics Co., C.H. Patrick & Co., Inc., BASF Corp., North American Philips Corp.

Cindy Brooks, C. Joe Miller, DowBrands, Inc., Indianapolis, Ind., for Dow Corp.

Daniel B. White, Heyward Clarkson, Rainey, Britton, Gibbes & Clarkson, Greenville, S.C., for third party defendants Tanner Chemical Co. and Southern Railway.

Rita McKinney, Greenville, S.C., Donald B. Mitchell, Jr., Lawrence E. Blatnik, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for third party defendant Central Transport, Inc.:

John B. McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., for third party defendants Steel Heddle Mfg. Co. and Apache Corp.

Russell T. Burke, Leon C. Harmon, Harold Jacob, Columbia, S.C., for third party defendant Square D Co.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

This matter is before the court upon motion of the plaintiff, joined by several third party defendants, to sever the third party claims in this action. At a status conference conducted on May 17, 1990, the court invited all parties to submit memoranda on the severance issue. The court also solicited comments and suggestions on the overall management of what obviously portends to be a complex and expensive case. Oral argument was heard on August 31, 1990.

At the conclusion of the hearing, the court announced that the third party claims would be severed and tried separately from the plaintiffs' claims and that discovery on the third party claims would be conducted in "stages". This order memorializes the court's ruling on these issues.

### FACTUAL BACKGROUND

The complaint filed by the plaintiffs, Milton M. Shockley and others, involves land known as the Old Orchard Meadows Tract. It consists of approximately seventy-five acres and is located along Hood and Suber Roads, near Greer, in Greenville County, South Carolina. A portion of the property is directly across Hood Road from a large industrial complex operated by Hoechst Celanese Corporation (HCC).

HCC also owns a parking lot immediately adjacent to the Shockley property. This parking lot includes a two acre parcel that was originally owned and operated as a chemical reclamation facility by the defendant William H. Groce, III.

The complaint alleges that the Shockley property has been contaminated by industrial wastes. It charges that the wastes have made their way to the Shockley property from two sources: (1) an unlined chemical storage lagoon owned and operated by HCC on its main plant property; and (2) the two acre Groce property. As to the

Groce property, the plaintiffs allege that HCC's industrial wastes were commingled with those of other industries. The complaint joins three parties as defendants, HCC, Groce and Groce Laboratories, Inc., a corporation owned by Mr. Groce.

HCC has filed a third party complaint in which it has joined twenty-six [1] third-party defendants. It alleges that most of these defendants are industries which generated wastes which were delivered to and handled at the Groce property. Other defendants are trucking companies which transported wastes to the property. HCC also alleges that three defendants, General Battery, Exide and Textron, disposed of hazardous substances on their own properties located upstream from the Shockley property. It contends that the Shockley property became contaminated as a result of all three of these types of activities.

HCC has sued for contribution under the South Carolina Uniform Contribution Among Tortfeasors Act, S.C.Code Ann. § 15–38–10 *et seq.*, (Law.Co-op.Supp.1989) and under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. § 9613(f) (West Supp.1990). HCC's contribution claims relate to the Shockley property and its possible liability to the plaintiffs on account of that property. But HCC also seeks more. It sues to recover response costs and asks for a declaratory judgment under CERCLA on account of the two acre Groce property, which it now owns. Issues as to cleanup of the Groce property are not involved in the complaint filed by the plaintiffs.

The third party complaint alleges that twenty-three of the twenty-six third party defendants are "generator defendants." This term refers to companies whose industrial wastes were delivered to and deposited at the Groce property. But these twenty-three are not the only companies whose wastes were handled there. William Groce identified in his deposition approximately forty companies whose wastes were handled at the property. Of those forty, many

---

**1.** HCC originally joined twenty-nine third party defendants. When it became apparent that there was no basis for asserting claims against three of the twenty-nine, HCC consented to dismissing these three.

of these have not been named as third party defendants.

## LEGAL ANALYSIS

Rule 14 of the *Fed.R.Civ.P.* specifically provides that "[a]ny party may move to strike the third party claim, or for its severance or separate trial." The Advisory Committee's Note to the 1963 amendment makes clear that the district court has discretion "to sever the third party claim or accord it separate trial if confusion or prejudice would otherwise result."

Professor Wright has noted that "[s]ufficient prejudice to warrant denial of impleader may be present when bringing in a third party will introduce unrelated issues and unduly complicate the original suit." Wright, Miller & Kane, *6 Federal Practice and Procedure: Civil 2d* § 1443, p. 304 (1990). Professor Wright's comment virtually defines this case.

█ It is immediately apparent that the third party complaint filed by HCC both introduces unrelated issues and unduly complicates the original action. The added issues and complexity are substantial:

1. The complaint seeks relief only as to the Shockley property. HCC's third party complaint, on the other hand, seeks relief for the damage to the Groce property as well. This additional claim will involve entirely separate evidence concerning the Groce property that has no relevance to the plaintiff's claims.

2. The complaint alleges that the Shockley property was contaminated as a result of waste handling procedures on the Groce property and on HCC's main plant property. These allegations will require discovery and the development of substantial evidence on practices involving these two parcels.

The third party complaint challenges waste handling practices on at least two additional properties, the facilities owned by Textron and by Exide/General Battery. Both are located approximately three-quarters of a mile upstream of the Shockley property. HCC's allegations that waste handling practices on these properties contaminated the Shockley property will require substantial evidence concerning operations at these plants. Complex expert evidence on hydraulics and hydrogeology will also be needed.[2]

3. The addition of twenty-six new defendants to a case originally involving three defendants unquestionably will complicate and prolong the trial. Even if HCC dismisses voluntarily some of the third party defendants, it is likely that many of them will remain. Moreover, HCC has moved to add some of the industrial concerns identified by William Groce as additional third party defendants. What otherwise would have been a relatively simple case to try will, by the addition of more than thirty defendants, become an exceptionally difficult one.

4. If the case remains consolidated, trial will be delayed. HCC will undertake discovery of the third party defendants, and some of the third party defendants no doubt will conduct discovery of one another as well as of HCC. Even if discovery is relatively simple—and it may not be—the sheer number of parties to be discovered will delay substantially the date on which this case might be expected to go to trial.

5. Consolidation also will mean transforming what is predominantly a jury trial involving three defendants into what is predominantly a non-jury trial involving 30 or more defendants. Two of the three causes of action in HCC's third party complaint are based on CERCLA. Only two of the six causes of action in the complaint are based on CERCLA. While trial by jury has been demanded by the plaintiffs, a jury trial is not available for CERCLA claims.

2. Groce Laboratories, Inc., a defendant to the underlying claim, suggests that the third party claim against Textron and Exide/General Battery should remain to be tried with the underlying claim even if all other third party claims are severed. Groce Laboratories argues that because these parties were a "direct source of contamination" to plaintiff's property, these claims are different from the other third party claims. The court disagrees. Groce Laboratories has not shown that these claims are substantially different. Moreover, plaintiffs stated at oral argument that they did not wish to assert direct claims against these three parties.

*See United States v. NEPACCO*, 810 F.2d 726, 749 (8th Cir.1986). If the case is consolidated, the jury requested by the plaintiffs will have to hear evidence from dozens of parties, but only on certain issues. Jury confusion is almost inevitable.

6. The third party complaint raises substantial legal issues that are not a part of the plaintiffs' case. For example, HCC's third cause of action is based on the South Carolina Uniform Contribution Among Tortfeasors Act, S.C.Code Ann. § 15–38–10 *et seq.* The applicability of this statute will almost certainly be attacked by the third party defendants. Questions concerning this statute do not affect plaintiffs' claims and would be more appropriately decided in the severed action.

Severance of the third-party complaint would not work an undue hardship or prejudice on HCC. If HCC is successful in its defense of the plaintiffs' claims, the various contribution issues will be mooted. The only remaining issue would be one which has nothing to do with the plaintiffs' claim, namely, whether and to what extent the third party defendants are liable to HCC for cleanup of the Groce property. Issues as to the Shockley property would no longer be relevant.

If the plaintiffs prevail against HCC, HCC will be able to litigate all its claims against the third party defendants. There is no reason to believe that its prosecution of those claims in any way will be prejudiced. While HCC conceivably could be put to the burden of trying two cases, the problems presented to the court and all litigants of trying a single, consolidated case clearly outweigh this burden.

This issue has arisen before in a CERCLA context. In *City of New York v. Exxon Corp.*, for example, the City sued 15 defendants over five landfills. Several hundred third party defendants were joined. Judge Weintraub determined that a severance was appropriate:

Pursuant to Rule 42(b) of the *Fed.R. Civ.P.*, this Court orders that any and all claims asserted against third party defendants and any and all counterclaims and/or crossclaims asserted by third party defendants be severed and tried separately from the primary suit brought by the City of New York against fifteen original defendants. Further, all proceedings relating to claims, counterclaims, crossclaims, and pretrial discovery involved in the third party actions are stayed pending further order of this Court.

To try this case with well over three hundred parties would be overwhelming due to the resulting administrative, procedural, factual, and legal complexities. Such a mass trial would also result in the unnecessary expenditures of a tremendous amount of money, time, and effort on the part of hundreds of parties and a wasting of judicial resources arising out of months of discovery, motion practice, and the trial itself. Determination of the issues in the primary case, or a settlement, should it occur, is likely to eliminate many issues in dispute between the defendants and the third party defendants. This would dispose of certain claims and parties involved in the third party actions, as well as offer the prospect of an amicable disposition of many of the other third party claims.

*City of New York v. Exxon Corp.*, Civ. No. 85 Civ. 1939, 13 Chem. Waste Lit. Rptr. 530 (S.D.N.Y. January 23, 1987).

The present case is not as gargantuan as *City of New York.* The same reasoning applies nevertheless. The court will sever the third party complaint and schedule it for trial at a date after the trial of the underlying complaint. Such action is clearly authorized by *Fed.R.Civ.P.* 14 and is within the spirit of Rule 1, which calls for the "just, speedy, and inexpensive determination of every action."

■ Based upon responses to the court's oral inquiry at the hearing, it appears that the underlying claim of Shockley and the other plaintiffs can be ready for trial in six months. Inasmuch as a resolution of the underlying claim in favor of HCC would substantially reduce (but not eliminate entirely) the third party claims, the most prudent course of action appears to be to continue the stay on responsive pleadings to

the third party claims [3] and to allow only limited discovery on these claims. Because shipping documents will be an important part of HCC's proof on its counterclaims (regardless of whether HCC prevails on the underlying claims) and because considerable time may be required to assimilate these documents, all third party defendants should gather and produce these documents, without the necessity of a formal motion by any party.

Regarding case management in general, W. Allen Reese, attorney for William H. Groce, II, has suggested that the court designate certain "ancillary exhibits." In cases such as this one, the facts are generally made easier to follow and retain where there are a few all-inclusive exhibits that are appropriately marked so that all witnesses can orient and explain their testimony by referring to the same exhibits. Eventually the judge, jury, counsel and the parties become more familiar with, and comfortable with, the exhibits. The court anticipates that the exhibits listed in Appendix A shall be marked and referred to as "Court's exhibits" and introduced at the trial before any other evidence. The court finds the exhibits listed to be (1) helpful and informative and (2) fair and noncontroversial. The court reserves the right, upon a proper showing, to remove any exhibits described below from the ancillary exhibit list.

For the foregoing reasons, it is ORDERED as follows:

(1) Any and all third party claims of Hoechst Celanese Corporation against all third party defendants and any and all counterclaims and/or crossclaims asserted by third party defendants are hereby severed and shall be tried following the conclusion of the primary suit brought by the plaintiffs ("the underlying claim");

(2) No third party defendant shall be required to answer, move, or otherwise plead to the third party complaint until ordered to do so by this court;

(3) No discovery shall be conducted on the third party claims except the following: All third party defendants who were gener-

ators shall copy and distribute to the third party plaintiff and to every third party defendant all shipping records, invoices, sales receipts, payment entries and all other documents in their possession relating to the shipment of any products or wastes to properties owned, operated or managed by William H. Groce, III and/or Groce Laboratories, Inc. between the years 1972 and 1977. Such documents must be produced within forty five days from the date of this order; provided, however, that any party may apply to the court for relief from, or an extension of time relating to, the provisions of this production order.

(4) Nothing herein shall prevent any third party defendant from filing a motion to dismiss for failure to state a claim, *Fed R.Civ.P.* 12(b)(6), or for summary judgment, *Fed.R.Civ.P.* 56, prior to the trial of the underlying claim.

(5) The ancillary exhibits referred to herein are adopted as court's exhibits, to be numbered, and consistently referred to by number, at all depositions and at trial. These exhibits shall be introduced at trial before the other evidence. The court reserves the right to make additions or deletions to the list of ancillary exhibits.

(6) The following scheduling order is established for the underlying claim:

A. Discovery shall be completed on or before February 15, 1991.

B. Motions to join other parties and to amend the pleadings shall be filed on or before October 30, 1990.

C. All other motions, except those to complete discovery, those nonwaivable motions made pursuant to Rule 12 of the *Fed.R.Civ.P.*, and those relating to the admissibility of evidence at trial, shall be filed on or before March 1, 1991.

D. This case is subject to be called for trial on or after April 1, 1991.

(7). HCC's oral motion to add additional third party defendants is granted. HCC shall file and serve an amended third party complaint, naming new third party defendants, on or before October 15, 1990.

IT IS SO ORDERED.

---

**3.** On August 31, 1990 the court granted all third party defendants an indefinite extension of time in which to answer, pending resolution of the severance question.

APPENDIX A—ANCILLARY EXHIBITS

(1). 1965 Aerial Topographic Map showing the Exide/General Battery site and Textron/Homelite site on the north (upper) side and proceeding south along Princess Creek to the Hoechst Celanese site south of Hood Road;

(2). Enlargement of a March, 1976 Aerial Photo showing Celanese and Groce sites at that time;

(3). A 1986 Aerial Photo showing same general area as 1965 Topographic Map, from Exide/General Battery to Hoechst Celanese;

(4). An enlargement of the portion of the 1986 photo showing the Hoechst and former Groce Sites in greater detail;

(5). An undated plat or plan of the Exide/General Battery Site showing the relative locations of a "closed lagoon"; 12 Monitoring Wells, on and below its site; 9 "recovery wells" on and downstream from its plant site; 6 "Surface Water Sampling Sites" (on Princess Creek); the Textron/Homelite Site (with a branch also leading into Princess Creek); and Princess Creek passing under Suber Mill Road as it enters the tract of plaintiffs;

(6). A 1989 Preliminary Lay Out of 98 proposed numbered lots of Plaintiffs' tract, showing Princess Creek and other topography on the tract;[4]

(7). A topographic plat, dated 7/7/89, prepared by Atlanta Testing & Engineering in behalf of plaintiffs, indicating the presence of three Monitoring Wells located on the southeasterly part of the tract, on the lower side of the 75 acre tract;

(8). Atlanta Testings' "TABLE 1" on which it sets out the unacceptable levels of four metals (Monitoring Well # 3 only) and seven "volatile organic" *solvents* found primarily in Monitoring Well # 3, with three of the solvents found in Monitoring Well # 2; and four of the Solvents found in Monitoring Well # 1;

(9). A HOECHST CELANESE MEMO dated 5/16/89 containing an estimated listing of approximately 37 of the different materials processed by Groce during the relevant period;

(10). Photo copy of a 1987 estimate prepared by SCDHEC showing specific annual waste materials generated by Textron/Homelite and its distribution, if any;

(11). Relevant portions of SCDHEC Regulation R 61–79.261 showing the materials (now known) to be involved in this litigation along with EPA Waste Number;

(12). Relevant portions of EPA Regulation found at CFR Part 261, also showing the EPA Waste Number and, in some cases, whether the substance is toxic (T); ignitable (I); corrosive (C); etc.

(13). Subdivided GLOSSARY of substances found in Atlanta Testings' Monitoring Wells as opposed to the substances processed by Groce during this period of time. In addition, the waste Substances known to have been stored in drums around the Hoechst Celanese Site will also be listed. (Counsel are directed to confer with one another and formulate such a glossary.)

---

**4.** Items (1) through (6) are reproductions or copies of documents obtained from Greenville County Planning Commission.